```
IN THE UNITED STATES DISTRICT COURT FOR THE
            EASTERN DISTRICT OF OKLAHOMA
```

HEATH DAN COSGROVE,            )
                               )
         Plaintiff,            )
                               )
v.                             )    Case No. CIV-12-398-FHS-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
         Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Heath Dan Cosgrove (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 22, 1975 and was 34 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a millwright, carpenter helper, conveyer belt installer, machine maintenance repairer, and mine machine operator. Claimant alleges an inability to work beginning February 1, 2009 due to limitations resulting

3

from neck and back injuries.

## Procedural History

On March 6, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 28, 2010, an administrative hearing was held before Administrative Law Judge ("ALJ") Osly F. Deramus. On September 13, 2010, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on July 20, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work with some restrictions.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) ignoring Dr. David Wiegman's vital probative evidence regarding Claimant's physical limitations; (2) performing an improper "phase one" analysis; (3) reaching an erroneous RFC; (4) finding Claimant can

4

perform work at the light exertional level; (5) engaging in a faulty credibility analysis; (6) failing to properly develop the record regarding Claimant's back, neck, and left hip limitations; and (7) not allowing Claimant's attorney to obtain favorable testimony from the vocational expert at the administrative hearing.

**Evaluation of Dr. Wiegman's Opinion**

In his decision, the ALJ determined Claimant suffered from the severe impairments of cervical degenerative disc disease and status post-cervical fusion with residual upper extremity pain and status post-remote low back surgery. (Tr. 11). The ALJ also found Claimant retained the RFC to perform a narrowed range of light work except he can stoop, balance, kneel, crawl, and crouch no more than occasionally. He could occasionally climb stairs, but never climb ladders. The ALJ found Claimant was able to occasionally grasp bilaterally and reach overhead bilaterally. (Tr. 12). After consultation with a vocational expert, the ALJ found Claimant could perform the representative job of furniture rental clerk which the expert testified existed in sufficient numbers in the regional and national economies. (Tr. 18).

Claimant contends the ALJ failed to consider evidence from Dr. David Wiegman which conflicted with the ALJ's findings. On May 16, 2009, Dr. Wiegman conducted a consultative physical examination of

5

Claimant. He determined upon examination that Claimant's arm and leg strength was decreased in the arms at 3/5 bilaterally, grip strength was decreased bilaterally at 2/5 on the left and 3/5 on the right. Arm and leg range of motion was normal. Claimant had decreased range of motion with only about 15 degrees of extension. Dr. Wiegman found Claimant experienced pain with all movements of his back and mild tenderness to palpation over his lower back. Claimant also demonstrated decreased extension at 45 degrees in his neck and had pain with movements of his neck and mild tenderness to palpation over his posterior neck. Claimant also had normal sensation except for decreased sensation to light touch over his left hand. (Tr. 203).

During the examination, Claimant had a normal symmetric steady gait. He was able to walk on his toes and heels separately and was able to walk heel-to-toe fairly well. He had good coordination with normal opposition of the thumb to the fingers except that his strength was weak in his hands. (Tr. 204).

Dr. Wiegman noted Claimant had a history of injury with a motor vehicle accident that caused him to have pain in his neck with bulging disc and subsequent surgeries to his lower back and neck. The condition caused Claimant problems with walking, standing, and lifting and he had associated left arm numbness and

bilateral arm and hand weakness. Id. Dr. Wiegman also found Claimant could not effectively grasp tools such as a hammer because of weakness. (Tr. 207).

Claimant reported to Dr. Wiegman that he had a prior surgery in his lumbar spine at L4-5. He had a discectomy and later had a disc taken out of his neck. Claimant told Dr. Wiegman that he continued to have chronic pain in his neck and lower back. He also complained of pain in his left arm which he stated was getting numb and weaker. Claimant stated he could not walk for more than a block due to left hip and back pain. He could not stand for long periods of time, longer than 30 minutes. He also told Dr. Wiegman he could not lift more than 10 pounds. (Tr. 202).

The ALJ determined that Dr. Wiegman's conclusion concerning Claimant's grip strength was entitled to no weight as it was not supported by medical evidence. He noted that Dr. Wiegman is not a treating physician. The ALJ also stated in his decision that Dr. Wiegman's finding lacked reference to x-rays or MRIs. He also found that grip strength testing was "totally dependent upon a patient's cooperation," causing the assessment to be questionable. He concluded that Claimant was able to effectively use hand tools on at least an occasional basis. (Tr. 14).

The ALJ is required to consider every medical opinion. Doyle

7

v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003). The ALJ specifically stated that he was giving Dr. Wiegman's opinion no weight as a non-treating physician on the specific issue of grip strength. The ALJ then relied upon Dr. Wiegman's finding that Claimant's gait was normal when challenging Claimant's credibility on his statements of an inability to walk correctly due to back pain. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). Additionally, the ALJ made a finding that the medical evidence did not show any loss of range of motion which would be consistent with a disabling degree of pain. (Tr. 15). Dr. Wiegman did find such a decreased range of motion in Claimant's back and neck along with back and neck pain. (Tr. 203, 205). Since the ALJ did not reference these findings by Dr. Wiegman but did accept other of his findings, it is unclear whether he considered Dr. Wiegman's opinion on the decreased range of motion and pain at all. On remand, the ALJ shall consider the totality of Dr. Wiegman's opinions.

**Improper Phase One Analysis**

Quite honestly, this Court is not certain as to the point of error Claimant is arguing in this portion of his brief. It is

8

Claimant's burden to articulate his arguments such that the Court can consider them. He has failed in this burden on this argument.

**RFC Determination**

Until Dr. Wiegman's opinions are fully considered, the Claimant's RFC must be re-evaluated on remand.

**Step Five Findings**

Claimant contends the ALJ should have considered the limitations found in Dr. Wiegman's opinions in his questioning of the vocational expert. On remand, the ALJ shall determine and explain the extent of limitations which should be included in the hypothetical questioning of the vocational expert.

**Credibility Analysis**

The ALJ largely rejected Claimant's testimony on limitations. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. This Court's difficulty with the ALJ's findings on credibility lies, in part, with his reliance upon Dr. Wiegman's examination findings in order to challenge Claimant's credibility when he

9

ostensibly gave no weight to the opinion.  On remand, the ALJ shall reconsider his findings on Claimant's credibility after determining whether Dr. Wiegman's findings and opinions are entitled to some or no weight.

### **Failure to Develop the Record**

Claimant argues the ALJ should have ordered a further consultative examination on Claimant's back, neck, and left hip limitations.  Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability.  Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."  Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). Further, the "ALJ has a basic duty of inquiry, 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.'"  Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir. 1993).  The ALJ is required to ask enough questions to ascertain "'(1) the nature of a claimant's alleged impairments, (2)

what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities.'" Id. Additional testing and consultative evaluation may be required if the medical evidence is in conflict or is inconclusive. Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997); 20 C.F.R. § 404.1519a(b)(4).

Nothing in the record gives rise to a conflict such that additional testing was required. Functional evaluation was achieved through other medical professionals and the ALJ did not shirk his duty by failing to order a further consultative examination.

**Cross Examination of the Vocational Expert**

Claimant contends the ALJ refused to allow his attorney to pose a question to the vocational expert. Claimant's attorney asked if the vocational expert heard Claimant's testimony and based upon that testimony, whether any jobs existed that he could perform. The ALJ required that a hypothetical question be posed which encompassed various limitations. The ALJ did not err in making this requirement in the questioning.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE